## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## EL DORADO DIVISION

DAVID HUDSON and DONNA HUDSON                    PLAINTIFF

v.                    Civil No. 03-1013

CONAGRA POULTRY COMPANY                          DEFENDANT

### O R D E R

Now on this 23d day of May, 2006, comes on for consideration **Plaintiffs' Motion To Vacate, Modify Or Correct Arbitration Award** (document #32), and from said motion, and the response thereto, the Court finds and orders as follows:

1.    Plaintiffs move this Court for vacation, modification, or correction of an Arbitration Award (the "Award"). Defendant opposes this motion, although it does not seek to have the Award confirmed.

2.    Some background is helpful to understanding the issues presented by the motion. Plaintiffs David and Donna Hudson (the "Hudsons") were at one time broiler growers for defendant ConAgra Poultry Company ("ConAgra"). The relationship between the Hudsons and ConAgra was governed by a contract called the Broiler Growing Agreement ("BGA").

Various disputes arose between the parties, culminating in the termination of their business relationship. The contract-based disputes were presented to a panel of arbitrators, pursuant to an arbitration provision in the BGA, and an arbitration award (not the one now under consideration) was issued in September, 2001.

Following the decision in this first arbitration, the Hudsons brought suit against ConAgra in the Circuit Court of Union County, Arkansas, on January 2, 2003, alleging that ConAgra had violated the Arkansas Deceptive Trade Practices Act ("ADTPA"). These claims sound in tort rather than in contract.

ConAgra removed the case, on the basis of diversity jurisdiction, and filed an Answer in which it alleged that the Hudsons' tort claims were required to be submitted to arbitration under the terms of the BGA.

The Court[1] entered an Order on November 14, 2003, directing the parties to proceed to arbitration "on all the claims stated in this case." The Court reasoned that the BGA dealt with a matter of interstate commerce, thus triggering application of the Federal Arbitration Act ("FAA"), as contended by ConAgra, rather than the Uniform Arbitration Act of Arkansas ("UAAA"), as contended by the Hudsons. Because tort claims are not arbitrable under the UAAA, but are arbitrable under the FAA, the Court concluded that arbitration of the tort claims was required pursuant to the arbitration provision of the BGA.

3. In the second arbitration, ConAgra took the position that the Hudsons' tort claims were barred by principles of issue preclusion, while the Hudsons took the position that the District Court had erred in finding that their tort claims were subject to

---

[1] Honorable Harry F. Barnes presiding.

arbitration.  Each side moved for summary disposition in its favor.

On January 23, 2006, an Award of Arbitrators (the "Award") was entered.  The Award denied the Hudsons' Motion For Summary Disposition and granted ConAgra's Motion For Summary Disposition.

The Hudsons argue that the Award should be vacated, modified, or corrected, under both the FAA and the UAAA.  The Court will take up the arguments they offer in support of their contention in the order they are set forth in the motion.

4.    The Hudsons first argue that the arbitrators refused to hear evidence material to the controversy and did not conduct a hearing, in violation of both the UAAA and the FAA.  They are correct that both state and federal law provide that the refusal to hear evidence material to a controversy is grounds for vacating an arbitral award.  See **A.C.A. §16-108-212(a)(4)** and **9 U.S.C. §10(a)(3)**.

This basis for vacatur presumes that the nature of the issues submitted for arbitration was such as to require the presentation of evidence.  The Hudsons do not, however, indicate what evidence they believe the arbitrators should have entertained.  The issues raised by ConAgra's successful Motion for Summary Disposition were legal issues, turning not on facts but on law.  The arbitrators held a preliminary hearing, at which the filing of motions for summary disposition was discussed, and detailed submissions were made by both parties.  This is not a situation where the Hudsons

-3-

were not given an opportunity to present their legal arguments. The Court thus concludes that the Award is not subject to being vacated on this basis.

5.  The Hudsons next argue that the arbitrators exceeded their powers, which would constitute grounds to vacate an award under **A.C.A. §16-108-212(a)(3)** or **9 U.S.C. §10(a)(4)**. They point out that under **A.C.A. §16-108-201(b)(2)**, tort claims are not subject to arbitration, and take the position, as they have throughout both the litigation and the arbitration of their ADTPA dispute with ConAgra, that their tort claims are not encompassed in the arbitration provisions of the BGA.

The Court's November 14, 2003, Order determined this issue adversely to the Hudsons, as did the decision of the arbitrators. The Court has, however, revisited the issue, and concludes that it was rightly decided at each juncture.

Two provisions of the BGA must be analyzed together to resolve the issue of arbitrability of the tort claims.  The choice-of-law clause in the BGA (Section C.7) provides that

> [t]o the extent practicable, all actions and proceedings with regard to the Agreement, including arbitration as hereafter provided, shall be exclusively filed, heard and resolved in Union (County/Parish), AR (State) for the propose [sic] of jurisdiction and venue.  The laws of ARKANSAS (State) shall exclusively apply and govern this agreement.

The arbitration clause (Section C.13) provides that

> [a]ll claims between [the Hudsons] and [ConAgra] arising out of or relating in any way to the negotiation,

execution, interpretation, and performance of the [BGA] shall be submitted to arbitration.

If Section C.7 is seen as dictating what claims are subject to arbitrability, the two clauses cannot be harmonized, because under Arkansas law, tort claims are not subject to arbitrability, yet the Hudsons' ADTPA claims clearly relate to the negotiation and performance of the BGA. The Supreme Court has, however, resolved the issue of such an ambiguity adversely to the Hudsons, in **Mastrobuono v. Shearson Lehman Hutton, Inc.**, **514 U.S. 52 (1995)**.

The arbitration agreement in **Mastrobuono** provided that "any controversy" arising out of the contract would be settled by arbitration, and also provided that New York law would govern the contract. There was no express reference to punitive damages, but New York law does not allow the issue of punitive damages to be resolved by arbitration. The arbitral award included punitive damages.

On a challenge to the punitive damages award, the Supreme Court held that the arbitration agreement did encompass punitive damages, reasoning as follows:

> We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other. In contrast, respondents' reading sets up the two clauses in conflict with one another: one foreclosing punitive damages, the other

allowing them.  This interpretation is untenable.
**514 U.S. at 63-64.**

Applying the **Mastrobuono** decision to the case at bar, the Hudsons' reading of the contract provisions in question would set up a similar conflict, one provision foreclosing arbitration of tort claims, the other allowing it.  The Court believes the correct interpretation is that the choice-of-law provision has to do with substantive principles that Arkansas courts would apply, and the arbitration provision demonstrates that the parties agreed to arbitrate all disputes arising out of the "negotiation, execution, interpretation, and performance" of the BGA.  There was, thus, an arbitration agreement with respect to the tort claims the Hudsons seek to advance in this case, and the arbitrators did not exceed their powers in arbitrating those claims.

6.   The Hudsons next argue that there was no arbitration agreement with respect to the issues decided in the second arbitration, which would constitute grounds to vacate an award under **A.C.A. §16-108-212(a)(5)**.  This argument is a variation on the argument set forth in ¶5, and subject to the same determination.

7.   The Hudsons next argue that the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." **9 U.S.C. §10(a)(4)**.  The Court finds no merit in this argument.  The

Hudsons do not suggest what claims remain undecided or indefinite, or in what respect the Award might not be "mutual," and the Award itself specifically states that it is in "full settlement of all claims submitted," and that "[a]ll claims not expressly granted herein are hereby, denied."

8.    The Hudsons next argue that the arbitrators made an award on a matter not submitted to them, which constitutes grounds for modification or correction of an arbitral award under **9 U.S.C. §11(b)** or **A.C.A. §16-108-213(2)**. This argument is put to rest by the terms of the Court's November 14, 2003, Order, directing the parties to submit "all the claims stated in this case" to arbitration.

9.    Finally, the Hudsons argue that the Award is imperfect in a matter of form not affecting the merits of the controversy, which constitutes grounds to modify or correct an arbitral award under **9 U.S.C. §11(c)** or **A.C.A. §16-108-212(a)(3)**. They do not, however, state the nature of the perceived imperfection in the Award, and the Court detects none.

10.   The Hudsons also argue, in their brief, that the arbitrators erred in applying principles of issue or claim preclusion to their ADTPA claims. This argument is unavailing. While an arbitral award is subject to vacatur if it is issued in manifest disregard of the law, the Court cannot vacate the Award because of an erroneous application of the law. Manifest disregard

for the law must be clearly shown, as happens when arbitrators correctly state the law but disregard it in reaching their decision. **Stroh Container Co. v. Delphi Industries, Inc.**, **783 F.2d 743 (8th Cir. 1986).**

No showing of manifest disregard is made here. Indeed, the Award contains no analysis of the reasons for the decision.[2] That lack precludes a finding of manifest disregard of the law, but does not invalidate the Award, as "[a]rbitrators are not required to elaborate their reasoning supporting an award, and to allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper functioning of the arbitral process." **Stroh**, **783 at 750** (internal citations and quotation omitted).

11. Because the Hudsons have failed to demonstrate any basis upon which the Award should be vacated, modified, or corrected, their motion must be denied.

**IT IS THEREFORE ORDERED** that **Plaintiffs' Motion To Vacate, Modify Or Correct Arbitration Award** (document #32) is **denied.**

**IT IS SO ORDERED.**

                     **/s/ Jimm Larry Hendren**
                     **JIMM LARRY HENDREN**
                     **UNITED STATES DISTRICT JUDGE**

---

[2] The first arbitration award was equally cryptic, but it was accompanied by a supplemental document entitled "Reasons For Award." Neither party has offered such a document in connection with the Award here under consideration, however.